THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES FELDMAN, LEO KOMITOR, HERMAN DEITSCH, HARRIS DIRECTOR, MAX ROTH, MURRAY KATZMAN, ALFRED ZEITZ and WILLIAM H. KRIMKO, Appellants.

Court of Special Sessions of City of New York, Appellate Part, Second Department, April 8, 1942.

*Albert Washor* [*Martin P. Krimko* of counsel], for the appellants.

*William O' Dwyer, District Attorney* [*Edward H. Levine* of counsel], for the respondent.

*Daniel P. A. Sweeney* and *Joseph Thomas McDonough*, of legal bureau of police department, *amici curiæ*.

BAYES, Ch. J. Appeal by defendants from judgments of the Magistrates' Court, East New York District, Brooklyn, rendered November 6, 1941, convicting them of a violation of section 436–1.0 of the Administrative Code of the City of New York.

The complaint charges that on January 1, 1941, defendant " did unlawfully in premises 1210 East New York Avenue cause and permit a cabaret to be conducted without a license in violation of Section 436–1.0 of the Administrative Code of the City of New York."

The facts are not in dispute.

The question raised herein is as to whether the owner of a hall who serves therein a dinner to about sixty couples, receiving therefor from the sponsoring association which engaged the hall, compensation at the rate of five dollars per couple and providing floor space for dancing with music supplied by the association, is required to obtain a cabaret license.

This calls for a construction of section 436–1.0 of the Administrative Code of the City of New York. Paragraph 3 of subdivision a of that section defines a cabaret to include a room in which " * * * any musical entertainment, singing, dancing or other similar amusement is permitted in connection with the restaurant business or the business of directly or indirectly selling to the public food or drink."

There is no question but that defendant is not engaged in the restaurant business, although he has a restaurant license covering premises 1208–10 East New York avenue, Brooklyn, N. Y., owned by him, and his business is that of caterer. Naturally in the service of food at a function of this character, those attending would expect and require some form of musical entertainment, singing

or dancing. We can well understand that defendant considers the entertainment so incidental and inconsequential that he should not be put to the trouble and expense of obtaining a license. The difficulty is, however, that the city legislature has so defined the word " cabaret " as to include the business of selling food or drink to the public, whether such sale be made directly or *indirectly*. In this case the arrangements were made with an organization known as the Howard Progressive Association, and it might be urged that the sale of the food was made directly to the association; but even so, on the plain facts of the case it was paid for by the public in attendance, and consequently was at least indirectly sold to them. Moreover, the language, " the business of directly or indirectly selling to the public food or drink," may be applied to a caterer as well as to a restaurateur. In any event, it seems clear that the legislators have so defined the word " cabaret " as to bring defendant's operations within the definition. It is true defendant did not engage the musicial entertainers, yet it is equally true that he permitted them to perform on the occasion in question.

In considering section 436–1.0 it should be noted that subdivision b thereof makes it unlawful " for any person to conduct, maintain or operate * * * a * * * cabaret unless the premises wherein the same is conducted * * * are licensed." Before application is made for such license it is in the first instance referred to the local police precinct. Thereupon the application is forwarded to the cabaret bureau of the police department which in turn notifies the fire department, department of housing and buildings, and the health department. From this it will be observed that in the inspections and reports from the three departments to which the notice is sent there is a substantial measure of protection to the public. Certainly the safeguarding of the welfare and safety of the public at a function of this character is of extreme importance and the issuance of a license furnishes a substantial measure of assurance that fire hazards, possible insecurity of the building and similar conditions have been looked into.

Moreover, if this dinner and entertainment had been conducted by the association as its own affair on premises owned by it, it would have been necessary to obtain a license under subdivision c of section 436–1.0. This is directly covered by the language of that subdivision. Since the license applies to the premises, the character of the event should be the determining factor irrespective of whether the affair was conducted by the association or, as in this case, the caterer.

In our opinion the acts of defendant bring him within the statute and the judgment should be affirmed. This decision, under stipulation contained in the record, likewise applies to seven other defendants.

KOZICKE and McDONALD, JJ., concur.