Stephen S. Scopas, M.
Defendants have been charged with violation of section 436-1.0 of the Administrative Code of the City of New York entitled “Regulation of dance halls and cabarets; licensing thereof
The defense has been advanced that John Slevin, one of the codefendants herein, was only an employee; that he has • no interest or part in the operation of the premises in question; and that he acted only as a doorman. His codefendant, Arthur Greenberg, admits that he has been in charge, control and direction of the premises; and that, moreover, he was present thereat when the summons was served upon John Slevin. In the absence of any evidence to the contrary, the court finds John Slevin, codefendant herein, not guilty and discharged.
The court is, therefore, concerned only with the innocence or guilt of Arthur Greenberg, charged with violating section 436-1.0 of the Administrative Code, which reads as follows:
“1. The words i public dance hall7 shall mean any room, place or space in the city in which dancing is carried on and to which the public may gain admission, either with or without the payment of a fee.
*397 ‘1 2. The words 1 public dance or ball ’ shall mean any dance or ball of any nature or description to which the public may gain admission.
‘ ‘ 3. The word ‘ cabaret ’ shall mean any room, place or space in the city in which any musical entertainment, singing, dancing or other similar amusement is permitted in connection with the restaurant business or the business of directly or indirectly selling to the public food or drink. * # *
‘ ‘ b. Public dance halls, cabarets and catering establishments; license.— It shall be unlawful for any person to conduct, maintain or operate, or engage in the business of conducting, maintaining or operating, a public dance hall, cabaret or catering establishment unless the premises wherein the same is conducted, maintained or operated are licensed in the manner prescribed herein.
“ c. Membership corporations; clubs; associations and societies. — A membership corporation, club, association or society which permits musical entertainment, singing, dancing or other form of amusement in premises wherein food or drink is directly or indirectly sold to its members, or their guests, or to the public, shall be deemed to be conducting a cabaret hereunder.”
The police department first became aware of the defendants’ activity when the following advertisement was observed in the New York Post: “ Party; Friday, Saturday, Sunday, in exclusive East Side apartment; for invitation call TE 8-7884 only between 5 and 10 P.M. Friday and Saturday; 5 to 9 P.M. Sunday. Subs, guys $3.00; gals $2.00.”
Said advertisement was received in evidence and marked “ People’s Exhibit 1 ”. Detective John Dell responded to this advertisement by calling the number in question. Upon calling said number he was advised to go to the Hotel Nassau on East 59th Street, to obtain a ticket. He paid $3 thereat to a male identified as “ Bill ” and was given a ticket to go to the apartment located at 202 East 61st Street. Upon arriving at the apartment on the 21st day of February of this year at approximately 9:00 p.m., he was admitted and received by the defendant. He was then asked his name by the defendant who then proceeded to collect a ticket previously obtained from “ Bill ”. He was told to make himself at home and to make the acquaintance of a girl. Music was made on a phonograph. About 35 persons were present, equally divided more or less between the sexes. Five couples were dancing; others were engaged in conversation; and still others were eating and drinking punch, hot chocolate, pretzels, cookies or candy bits.
*398 When detective Dell identified himself and served the defendant with a summons, the defendant admitted that he received all the moneys and that he was in charge of the premises. From the proceeds, defendant stated that all expenses were defrayed for rent, advertisements, telephone, towels and soap and legal fees.
The apartment was a railroad type apartment of three rooms consisting of a living.room, a kitchen and a room in the rear in which there were two chairs, two couches and a phonograph and a tape-recording machine. It is conceded that there was no live music or entertainment furnished and that no alcoholic beverages were served. In his defense, Arthur Greenberg testified that his main objective was to form a club for the purpose of promoting the mingling of eligible young unmarried men and women with the ultimate object of matrimony. He testified that he contemplated the forming of a regular chartered club; that the card entitling persons admission to the party contained the legend: “ Probationary membership card ” and “ East Side Friend’s Club
He maintained further that he was able to screen persons desiring to attend his parties through the conversations had over the telephone preceding their referral to “ Bill ” for their admission card; that after a person attended three parties and was otherwise found eligible, he would qualify for permanent membership at an annual fee of $10. Fees paid during the probationary period were to be credited against this amount.
It was the contention of the defendant that he did not pay for the refreshments but that female members volunteered to furnish them. He stated that more than half who called his telephone number were rejected because of marital status, age or impression made upon him over the telephone. He categorically denied any intention to conduct a public dance or cabaret.
On cross-examination he admitted that there were no other officers in his club other than himself as president, and his sister as secretary and treasurer; that there were no formal application blanks or constitution and by-laws in existence; and that no petition had as yet been filed for a charter. Ho business meetings had ever been held; and no board of directors had ever been elected. He stated that he had registered the trade name of “ West Side Young Folks’ Club ” with the County Clerk of Hew York County, but admitted that all moneys from this operation were deposited to his individual name. He also stated that he resided in an apartment on the West Side and that he had rented the apartment in question solely for the purpose hereinbefore mentioned.
*399 WMle the pertinent provisions under the Administrative Code became effective on January 1, 1927, a careful review of the authorities indicates a dearth of reported cases on the issues involved herein. Perhaps the issues have been of fact rather than law. In any event, our courts have invariably looked into the historical background of laws which are before them for interpretation in order to have the benefit of the legislative intent.
Present cabaret and dance hall laws and regulations stem from legislation introduced in the Municipal Assembly on June 17, 1926, by the then Mayor of the City of New York. The proposed law was referred to the committee on local law which reported back on December 7, 1926. Its findings are as follows:
The Municipal Assembly of the City of New York Aldermanic Branch
Aldermanie Chamber, City Hall, Tuesday,
December 7, 1926, 1:15 o’clock P.M.
Reports of Committees
Rec. No. 10
Report of the Committee on Local Laws in favor of adopting a Local Law to regulate Dance Halls and Cabarets and providing for licensing same. The Committee on Local Laws, to which was referred on October 26, 1926, (Minutes pg 1937), the annexed local law to regulate Dance Halls and Cabarets and providing for licensing the same, respectfully

REPORTS

Your committee gave two public hearings on this bill and its adoption was urged by the police and license commissioners, by clergymen of various denominations and citizens interested in social and recreational work. It was opposed by licensees and owners of cabarets, personally and by their attorneys, and by representatives of musical organizations.
These night clubs or cabarets are simply dance halls, where food is served at exorbitant prices to the time of jazz and tabloid entertainment. A very frank opposition was voiced by one of the licensees, on the ground that when strangers came to New York they wanted to run Wild. Well, there has been altogether too much running wild in some of these night clubs and in the judgment of your committee the wild stranger and the foolish native should have the check-rein applied a little bit. It is well known that the wild strangers are not at all interested in our great museums of art and history, in our magnificent churches and public libraries, our splendid parks and public monuments. They are interested in speak-easies and dance halls and return to their native heaths to slander New York.
Your committee believes that those wild people should not be tumbling out of these resorts at six or seven o’clock in the morning to the scandal and annoyance of decent residents on their way to daily employment.
Favorable action is recommended.
Subsequently and on December 12, 1926, Local Law No. 12 was enacted and went into effect on January 1, 1927.
*400 So much for legislative intent of the statute in question. A review of the case law thereunder discloses that the case of People v. Feldman (178 Misc. 322) decided by the Second Appellate Part of the Court of Special Sessions, is the only reported case that has any bearing or application to the issues involved herein. In said case, a caterer who had a restaurant license served a dinner to some 60 couples at $5 per couple and was paid for same by the sponsoring association which had engaged the hall. Floor space was provided for dancing with music supplied by the association. The opinion of Bayes, Ch. J., contained the following (p. 323):
“ There is no question but that defendant is not engaged in the restaurant business, although he has a restaurant license covering premises 1208-10 East New York avenue, Brooklyn, N. Y., owned by him, and his business is that of caterer. Naturally in the service of food at a function of this character, those attending would expect and require some form of musical entertainment, singing or dancing. We can well understand that defendant considers the entertainment so incidental and inconsequential that he should not be put to the trouble and expense of obtaining a license. The difficulty is, however, that the city legislature has so defined the word 1 cabaret ’ as to include the business of selling food or drink to the public, whether such sale be made directly or indirectly. * * *
‘ ‘ In considering section 436-1.0 it should be noted that subdivision b thereof make it unlawful ‘ for any person to conduct, maintain or operate * * * a * * * cabaret unless the premises wherein the same is conducted * * * are licensed. ’ Before application is made for such license it is ill the first instance referred to the local police precinct. Thereupon the application is forwarded to the cabaret bureau of the police department which in turn notifies the fire department, department of housing and buildings, and the health department. From this it will be observed that in the inspections and reports from the three departments to which the notice is sent there is a substantial measure of protection to the public. Certainly the safeguarding of the welfare and safety of the public at a function of this character is of extreme importance and the issuance of a license furnishes a substantial measure of assurance that fire hazards, possible insecurity of the building and similar conditions have been looked into.”
A review of the history of the cabaret law clearly reveals that the legislators recognized the social evils that may flow from nonsupervised and unlicensed cabaret and dance halls. The statute has not been enacted for the purpose of producing *401 revenue but rather for the safety and protection of the public. The premises and not the person is to be licensed. An application for a license to conduct a dance or a cabaret is referred by the police department to the fire, housing and building and health departments. Municipal ordinances governing zoning, public assembly, health and fire hazards must be observed and cannot be circumvented by any ruse or subterfuge. One need only recall the horrible holocaust of the famous Cocoanut Grove fire in Boston to realize the wisdom for this procedure. In the case before the court, the defendant, however laudatory may have been his motives in extending the boon of acquaintance, friendship and romance to lonely people seeking companionship of the opposide sex, has been engaged in a commercial enterprise. His appeal has been to the public in the form of an advertisement in a daily newspaper. That appeal contains no invitation to join a club, the self-serving declaration of the defendant to the contrary notwithstanding. This appeal to the public in our city of eight million persons is not diminished by restricting admission to young or unmarried couples from among those responding to the advertisement. A ‘ ‘ party ’ ’ connotes dancing and refreshments regardless of whether or not the latter had been supplied directly or indirectly. (People v. Feldman, supra.)
The absence of an intention by the defendant to commit a wrong, and his reliance upon counsel for advice, are immaterial to the issue of whether he violated the pertinent provisions of the Administrative Code since his operation of a public dance and cabaret without appropriate licenses are in the nature of malum prohibitum. They should, however, be given consideration by the court in mitigation of the offense.
The public morals, health and safety can only be protected and safeguarded through proper supervision and licensing as prescribed by law.
The court having reserved decision on motion made by counsel for the defendant at the end of the People’s case to dismiss the charges of operating a public dance and cabaret without a license for failure to make out a prima facie case hereby denies the same; and at the end of the entire case, the motion made by counsel for the defendant to dismiss the charges because the People have failed beyond a reasonable doubt to prove the same is denied.
The defendant is found guilty on both charges.