OPINION OF THE COURT
Edward O. Provenzano, J.
This is a proceeding, pursuant to CPLR article 78, to review a determination of the respondent agents and employees of the City of Rochester denying petitioner’s application for an entertainment license.
Petitioner is doing business as The Centurion Lounge in premises at 1363 North Goodman Street in the City of Roches *391 ter. It appears that petitioner’s business at that address is a restaurant and bar.
At some unspecified date prior to July 18, 1977 petitioner applied for a class D amusement license (issued by the City of Rochester) for the said premises. Neither petitioner’s license application nor any copy thereof has been made a part of the papers before the court. Nor has the court been apprised of the kind or kinds of amusement or entertainment for which the license was sought.
The Code of the City of Rochester (§ 29-20) divides "public amusements” into five classes as follows:
"Class A. All entertainments of a theatrical, dramatic, vaudeville, variety or spectacular character and entertainments given in motion picture theaters.
"Class A-l. All entertainments of a theatrical, dramatic, vaudeville, variety or spectacular character and entertainments given out-of-doors which may be viewed or witnessed by spectators while remaining in vehicles.
"Class B. Skating carnivals, exhibitions or entertainments; basketball games; hockey and lacrosse games; wrestling matches; boxing exhibitions; prizefights; baseball games; football and soccer games; tournaments and similar activities.
"Class C. Circuses, carnivals, rodeos, wild-West shows and caravans.
"Class D. All exhibitions, performances or contests not included in any other class.”
The code further (§ 29-19) defines "public amusements” as any entertainment offered or operated "for gain or for admission to which the public is required to pay a fee” and provides (§ 29-21) generally that no public amusement may be offered or operated without obtaining a proper license therefor. Subdivision B of section 29-21 and section 68-3 of the City Code provide that applications for amusement licenses shall be made to the treasurer’s office (in the comptroller’s department) and shall contain such information as the chief of police may require. The license for a class D amusement of section 29-20 is called a "certificate of inspection” (§ 29-21, subd F and § 29-22, subd B). In contrast to the licenses for class A, class A-1, class B and class C amusements, which are issued for the particular activities concerned, certificates of inspection are issued for the premises (defined as "public places of amusement”) wherein class D amusements are conducted. No place *392 may be used or occupied as a public place of amusement unless it complies with the City Code provisions relating to buildings and health and the rules, regulations and orders of the police department relating to fire prevention and safety (§ 29-27, subd A). A license or certificate of inspection is issued by the chief of police, but only after he certifies that the premises wherein the particular amusement is to be held comply with the provisions of the City Code and any "orders, rules or regulations” which the Commissioner of Public Safety "may deem necessary” (§ 29-21, subd B). No party has apprised the court of any such "orders, rules or regulations” promulgated by the police chief, so the court will assume that none such exist.
Petitioner’s aforesaid application for a license (certificate) was denied in a writing, on the letterhead of the respondent chief of police, dated July 18, 1977. The letter of denial (which contained no reasons therefor) was addressed to petitioner from respondent Knapp, as commander of the (police department’s) co-ordination and communication section and was signed, on Knapp’s behalf, by respondent Bunce of the central license section. No issue has been raised concerning the capacity of Knapp and/or Bunce to act on behalf of the respondent police chief (Hastings) and petitioner has chosen to treat the denial of his application as an action of the chief of police.
This proceeding was commenced by order to show cause and came before the court at Special Term on August 10. Petitioner alleged that respondent’s denial was arbitrary, capricious and contrary to law because (1) petitioner had a class D amusement license for the subject premises for each of the preceding five years, (2) it was made without affording him a prior hearing, and (3) the respondent police officials were attempting to convert a licensing statute into a penal statute, so as to permit them to treat him indirectly in a manner in which they are prohibited from treating him directly. Respondent’s counsel submitted a reply affidavit by respondent Bunce, sworn to August 9, stating that the reasons for denial, as allegedly developed through police investigation and reported to respondent Hastings, included the following:
(A) firsthand information, from the affidavit of an FBI agent who was allegedly present, that at about 9:30 p.m. on August 30, 1976 the front door to the subject premises was locked, that thereafter an unlawful card game was conducted therein, that a named individual, a "member of organized crime in the *393 City of Rochester and a known gambler,” was the banker of said game and that Victor Carroll, petitioner’s son and manager of the premises, was also present and approved of said unlawful card game;
(B) the "known” frequenting of the premises by "members of organized crime” and the belief that criminal activities are discussed therein by said persons (14 of whom were named specifically);
(C) reports received by the police that drugs and stolen property are sold at the subject premises;
(D) apparent evidence that the subject premises were used by members of organized crime between April, 1976 and July, 1976 to attempt to bribe a police officer, as a result of which the aforesaid named individual (in [(A)] supra) was convicted of a bribery charge and sentenced to a State prison.
The court reserved decision, pending receipt of briefs from counsel, and counsel orally stipulated that in the interim petitioner would be able to conduct his business as if a certificate of inspection had been issued therefor.
Petitioner’s counsel subsequently submitted a preliminary brief and a (later) memorandum of law, wherein he argues that respondents’ aforesaid denial was arbitrary, capricious and contrary to law because (a) a licensing official may not consider the character of the applicant where not given such specific power by statute or ordinance, (b) the aforesaid reasons for denial were not based on factors "relating to the conduct of the business or the maintenance of the premises” which are the only factors respondents have jurisdiction to consider, (c) it was a violation of the equal protection and due process clauses of the Federal Constitution to deny the license application without affording petitioner a hearing where he would have had an opportunity to rebut the allegations on which the denial was based, (d) respondents are without discretion, in passing on license applications, to consider factors other than those relating to public safety, and (e) there was an absence of sufficient evidence to support the denial.
The Corporation Counsel’s brief included, inter alia, a supplemental reply affidavit by respondent Bunce, sworn to August 30, wherein he (1) stated that the records of the Police Department, confirmed by the records in the City Treasurer’s office, showed that no class D amusement license had been issued for the subject premises for any year subsequent to 1973, and (2) attached a posttrial decision of a Rochester City *394 Court Judge, dated July 5, 1977, rendered in connection with an unsuccessful gambling prosecution against two men (unrelated to the present proceedings), which contained the following excerpts:
"The People’s witness * * * testified that he was invited to a 'stag party’ by Victor Carroll, the owner of the bar; that he arrived about 7:30 p.m. and remained there until 2:30 or 3:00 a.m. on August 30, 1976; that he entered through an unlocked door, went to the bar, had several drinks, ate and then joined the blackjack game.
"It is clear that unlawful gambling was being engaged in at the Centurion Lounge on August 30, 1976”.
The court thereafter scheduled an evidentiary hearing to resolve the issue of whether petitioner held a class D amusement license for the subject premises during 1976 and whether his application was thus to be considered as for a renewal rather than an original license (cf. Rapaport v Village of Port Chester, 27 AD2d 850). Petitioner’s counsel was unable to appear at the scheduled hearing because he was at that time engaged in a criminal trial in another court. Subsequently, however, he advised the court of his intention to forego the hearing. Instead, counsel for both sides entered into a written stipulation, submitted to the court on November 25, that 1973 was the last year for which a class D amusement license had been issued to petitioner.
The court therefore treats petitioner’s application as one for an original license (certificate) and treats the proceeding as one in the nature of mandamus to review respondents’ administrative action. (See Matter of Rochester Colony v Hostetter, 19 AD2d 250, 253.)
The extraordinary remedy of mandamus will lie only where there is a clear legal right thereto. (State of New York v King, 36 NY2d 59.) The petitioner can succeed only if he establishes a clear legal right to a license (Matter of Small v Moss, 277 NY 501, 507; Matter of Agoglia v Mulrooney, 259 NY 462, 565; Matter of Maytum v Nelson, 53 AD2d 221). Before a court may direct that a license shall be issued, it must appear, as a matter of law, that no valid ground exists for its denial. (Matter of Employers Claim Control Serv. Corp. v Workmen’s Compensation Bd., 35 NY2d 492, 499.)
An ordinance must be construed in connection with, and in subordination to, the charter or statute from which it derives its force as well as the general law and public policy of the *395 State and all ordinances in pari materia (which relate to the same subject matter or which have a common purpose). (62 CJS, Municipal Corporations, § 442, p 851.) The following provisions are deemed pertinent:
"[E]very city is empowered * * * to maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; to regulate and license occupations and businesses. (General City Law, §20, subd 13). (See Rochester City Charter, § 85, as enacted by L 1907, ch. 755, to substantially the same effect.)
"Any board, bureau or officer authorized by ordinance of the council to grant any license, has discretionary power to grant or refuse the same”. (City Charter, § 5-39, as amd by Local Laws, 1965, No. 4).
"The Commissioner of Public Safety is hereby authorized to make and enforce such rules, orders and regulations as in his judgment may be necessary to protect the public in all places wherein public amusements are offered, produced or presented and to station personnel of his department on the premises so used, when in his judgment, the presence of such personnel is necessary in the interest of public welfare or safety.” (City Code, § 29-23, subd A.)
"Persons holding licenses for Class D amusements shall comply with all laws of the State of New York, ordinances of the Council and orders, rules and regulations of the Commissioner of Public Safety relating to the conduct of such amusement and the maintenance of the premises wherein it is so conducted.” (City Code, § 29-26.)
The general rules relating to the construction and operation of ordinances and statutes apply in determining the validity, operation and effect of a licensing ordinance. The legislative intent should be arrived at, if possible, from the language of the enactment itself but must sometimes be construed in connection with other related enactments in order to ascertain its scope and effect. (53 CJS, Licenses, § 13, pp 492-493.)
In Matter of Barton Trucking Corp. v O’Connell (7 NY2d 299, 307) the Court of Appeals said: "There can be no disputing the general rule that any discretionary powers exercised by an administrative officer must be delegated to him by statute, and that such delegation must be accompanied by standards to guide the exercise of administrative discretion. With respect to licensing officials, however, it is equally well *396 settled that the power to withhold a license for good cause, as well as the standards defining good cause, need not be expressly delegated where, by fair implication, in light of the statutory purpose, such power has been implicitly delegated.”
Thus a licensing official has implicit power to pass on the character and fitness of an applicant even though such power is not expressly provided (Matter of Barton Trucking Corp., supra, pp 308-309). Likewise, by necessary implication, licenses could not be granted to those who violate any provision of the law (Matter of Small v Moss, 279 NY 288, 292; see, also, Matter of Barton Trucking Corp., supra, p 306). Matter of Rosenberg v Moss (266 App Div 845, affd 296 NY 595) affirmed a holding that the New York City Commissioner of Licenses was not limited to the formal requirements specified in the Administrative Code of the City of New York (for issuance of a bowling alley license) but could also consider what effect the granting of the license would have on the public health, safety or morals of the community.
This court finds an applicable parallel between the amusement license provisions presently in issue and the cabaret license provisions of the New York City Administrative Code. Subdivision 3 of section B32-296.0 of that code defines a "cabaret” as (with certain exceptions): "Any room, place or space * * * in which any musical entertainment, singing, dancing, or other form of amusement is permitted in connection with the restaurant business or the business of directly or indirectly selling to the public food or drink.”
The important public interests which lie behind the cabaret licensing requirements are described in People v Greenberg (12 Misc 2d 396, reviewing the history of the law). It is thus readily understandable why failure to comply with the cabaret licensing ordinance has been made prosecutable as a penal offense. (See People v Byrne, 84 Misc 2d 211; People v Rickoff, 31 Misc 2d 549.) The ordinances presently before the court are to similar effect. Section 68-15 of the Rochester City Code provides punishment of up to $150 and/or 150 days imprisonment for a violation of the licensing requirements of the City Code. " 'That an unsupervised cabaret offers a tempting field for abuses and crimes is almost axiomatic’.” (Matter of Playboy Club v O’Connell, 18 AD2d 339, 346, affd 14 NY2d 503. See, also, Continental Club Lounge v Kennedy, 195 NYS2d 980.) In Matter of Agoglia v Mulrooney (259 NY 462, 464) a cabaret license case, the Court of Appeals stated: "It is not *397 without significance that the law in question transferred jurisdiction over the issuance of dance hall and cabaret licenses from the Department of Licenses to the Police Commissioner.”
The Agoglia case is especially significant here. A major factor for the (New York City) police commissioner’s denial of a cabaret license there was his stated belief that the premises sought to be licensed were likely to become a breeding place for crime. He relied on two reports from two commanding officers of the precinct in which the proposed cabaret was to be located. The only statement he made (in an opposing affidavit to the court) about those reports was that they recommended disapproval of the application. The reports were not in the record, nor was there any further reference to any portion of their subject matter which might tend to provide some probative basis for the precinct commanders’ conclusions. Nevertheless, in reversing the lower courts (which had granted mandamus) the Court of Appeals referred to those reports as part of the basis upon which "the refusal of the Commissioner of Police to issue the license can hardly be said to have been capricious or unreasonable.” (Matter of Agoglia v Mulrooney, 259 NY 462, 465, supra.)
In Matter of Playboy Club v O’Connell (18 AD2d 339, affd 14 NY2d 503) the appellate courts upheld the denial of a cabaret license where the ground for denial was the license commissioner’s mere apprehension that if the license were granted the "Bunny” waitresses would mingle with customers, in violation of a license department regulation.
Finally, the court observes that no hearing is required on an application for an original license where the statute or ordinance does not provide for a hearing. (See Matter of Fink v Cole, 1 NY2d 48, 51-52; Matter of Incorporated Vil. of Lynbrook v Simon, 38 Misc 2d 547.)
On all of the foregoing, it therefore clearly appears that respondents’ determination of July 18, 1977 was not arbitrary or capricious or contrary to law and that it was well within the limits of the administrative discretion delegated to the chief of police under the applicable licensing legislation considered as a whole. (See Price v Village of Freeport, 60 Misc 2d 888.)
Petitioner has shown no clear legal right to a class D amusement license. Moreover, it does not appear, as a matter *398 of law, that no valid ground existed for respondents’ denial of petitioner’s application for such license.
Respondents’ determination is confirmed and the petition is dismissed.