# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

# 421 CORPORATION, ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, ET AL.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 96-2234-II     Carol L. McCoy, Chancellor**

-----

**No. M1997-00212-COA-R3-CV - Decided April 26, 2000**

-----

This appeal involves a dispute between a sexually oriented business and a city over the business's desire to expand onto adjoining property. After the city's board of zoning appeals denied its application for a building permit because the business had not met the requirements for the expansion of a nonconforming use, the business filed a petition for a common-law writ of certiorari in the Chancery Court for Davidson County asserting that it had satisfied the city's standards for expanding a nonconforming use and that the board was selectively enforcing the city's land use regulations. The trial court, sitting without a jury, rejected both claims and affirmed the board's decision. On this appeal, the business renews the same arguments that proved unsuccessful below. We have determined that the board correctly interpreted the city's land use regulations and that the selective enforcement allegations fail to state a claim for which relief can be granted. Accordingly, we affirm the order dismissing the petition for writ of certiorari.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**.

KOCH, J., delivered the opinion of the court, in which TODD, P.J., M.S., and CANTRELL, J., joined.

Joel H. Moseley and Robert W. Rutherford, Nashville, Tennessee, for the appellants, 421 Corporation and Mike Sokolic.

James L. Murphy, Lizabeth D. Foster, and Francis H. Young, Nashville, Tennessee, for the appellees, Metropolitan Government of Nashville and Davidson County, Tennessee and the Metropolitan Board of Zoning Appeals.

## OPINION

421 Corporation operates a store named The Purple Onion that sells sexually oriented materials. The store is located at 2807 Nolensville Road in Nashville on property owned by Mike Sokolic. The Purple Onion's location does not comply with Nashville's current zoning ordinance restricting sexually oriented businesses primarily to the downtown area. However, Nashville has allowed The Purple Onion to continue in business on Nolensville Road as a nonconforming use

because it was already doing business at that location when Nashville enacted its comprehensive zoning ordinance in September 1977.

Sometime after September 1977, Mr. Sokolic acquired the real property next door to The Purple Onion at 2809 Nolensville Road. The building on this property shares a common wall with the building housing The Purple Onion. At Mr. Sokolic's request, the tax assessor combined the two tracts into one and designated the tracts as 2807 Nolensville Road on the tax map. Mr. Sokolic and 421 Corporation later decided to expand The Purple Onion into the adjacent building by removing portions of the common wall. The zoning administrator declined to issue a building permit for the construction, and Mr. Sokolic requested the Metropolitan Board of Zoning Appeals to reverse the zoning administrator's decision. The board also declined to approve the proposed expansion of The Purple Onion because the expanded business would no longer be on the same property it occupied when it became a nonconforming use.

Mr. Sokolic and 421 Corporation filed a petition for writ of certiorari in the Chancery Court for Davidson County seeking judicial review of the board's decision. They asserted that the board had misconstrued the provisions in the zoning ordinance regarding the alteration of nonconforming uses and that the city was selectively enforcing its zoning ordinance. In support of their latter contention, Mr. Sokolic and 421 Corporation claimed that Nashville was permitting two other sexually oriented businesses that did not qualify as nonconforming uses to operate illegally in the Nolensville Road area. The trial court granted Nashville's motion to dismiss the selective enforcement claim for failure to state a claim upon which relief can be granted. Then, following a hearing, the trial court upheld the board's action after concluding that both state law and the city ordinance required a nonconforming use to remain on the same property. Mr. Sokolic and 421 Corporation have appealed.

## I.
### THE STANDARD OF REVIEW

We take up first the standard of review applicable to this appeal. The proper vehicle for reviewing decisions of local boards of zoning appeals is the common-law writ of certiorari. *See McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). This writ affords quite limited judicial review, *see Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994), that consists of determining whether the administrative body exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *See Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342-43 (Tenn. 1983); *Hoover, Inc. v. Metropolitan Bd. of Zoning Appeals*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997); *Hemontolor v. Wilson County Bd. of Zoning Appeals*, 883 S.W.2d 613, 616 (Tenn. Ct. App. 1994).

Judicial review under a common-law writ of certiorari is limited to the record made before the board or agency, unless the court permits the introduction of additional evidence on the issue of whether the board or agency exceeded its jurisdiction, or acted illegally, capriciously, or arbitrarily. *See Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987); *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983). The reviewing courts will not reweigh the evidence, *see Watts*

*v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc. v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996), examine the intrinsic correctness of the decision being reviewed, *see McCord v. Nashville, C. & St. L. Ry.*, 187 Tenn. 277, 294, 213 S.W.2d 196, 204 (1948); *Tarpley v. Traughber*, 944 S.W.2d 394, 395 (Tenn. Ct. App. 1996), or substitute their judgment for that of the local officials. *See Whittemore v. Brentwood Planning Comm'n*, 835 S.W.2d 11, 15 (Tenn. Ct. App. 1992).

The common-law writ of certiorari likewise provides limited options for dealing with errors discovered in the proceedings being reviewed. Because courts should avoid dictating specific decisions to local zoning boards except in the most extraordinary circumstances, the most common judicial remedy in zoning cases is to remand the case to the zoning agency with instructions appropriate to the circumstances of the case. *See* 4 Robert M. Anderson, *American Law of Zoning* § 27.39, at 598 (3d ed.1986). Rather than shouldering the local agency's responsibilities, the courts should insist that the agency carry out its task in an appropriate manner. The goal of a remand should be to place the parties and the agency in the position they would have been in had the agency not acted improperly. *See Hoover v. Metropolitan Bd. of Zoning Appeals*, 955 S.W.2d at 55.

## II.
### THE BOARD'S INTERPRETATION OF THE LOCAL ZONING ORDINANCE AND RELIANCE ON STATE LAW

Mr. Sokolic and 421 Corporation assert that the board acted arbitrarily and illegally by misconstruing the zoning ordinance governing alterations of nonconforming uses and by relying on a state statute limiting the power of local governments to enforce their zoning ordinances against otherwise legal nonconforming uses. We have determined that the provisions in the zoning ordinance and state law relating to the alteration of nonconforming uses should be read in pari materia, and accordingly, that the board did not misconstrue the zoning ordinance.

### A.

Local governments lack inherent power to control the use of private property within their boundaries. Their power derives from the State through specific delegation by the General Assembly. *See State ex rel. SCA Chem. Servs. v. Sanidas*, 681 S.W.2d 557, 562 (Tenn. 1984); *Family Golf of Nashville, Inc. v. Metropolitan Gov't*, 964 S.W.2d 254, 257 (Tenn. Ct. App. 1997). While local governments have considerable discretion to act within the scope of their delegated power, they cannot effectively nullify state law on the same subject by enacting ordinances that ignore applicable state laws, that grant rights that state law denies, or that deny rights that state law grants. *See generally State ex rel. Beasley v. Mayor & Aldermen of Fayetteville*, 196 Tenn. 407, 415-16, 268 S.W.2d 330, 334 (1954). Thus, local governments must exercise their delegated power consistently with the delegation statutes from which they derive their power. *See Henry v. White*, 194 Tenn. 192, 196, 250 S.W.2d 70, 71 (1952).

When the language of an ordinance is clear, the courts will enforce the ordinance as written. When, however, the language of an ordinance is ambiguous, the courts will resort to the customary principles of statutory construction. *See Whittemore v. Brentwood Planning Comm'n*, 835 S.W.2d

at 15.  Accordingly, the reviewing courts will construe a zoning ordinance as a whole and will give its words their natural and ordinary meaning.  *See Lions Head Homeowners Assoc., Inc. v. Metropolitan Bd. of Zoning Appeals*, 968 S.W.2d 296, 301 (Tenn. Ct. App. 1997); *Boles v. City of Chattanooga*, 892 S.W.2d 416, 420 (Tenn. Ct. App. 1994).  They will also seek the interpretation that is most consistent with the ordinance's general purposes, but they will resolve ambiguities in favor of the property owner's right to the unrestricted use of his or her property.  *See State ex rel. Morris v. City of Nashville*, 207 Tenn. 672, 680, 343 S.W.2d 847, 850 (1961); *State ex rel. Wright v. City of Oak Hill*, 204 Tenn. 353, 356, 321 S.W.2d 557, 559 (1959).

The well-known in pari materia rules also apply to the construction of zoning ordinances.  Thus, zoning ordinances dealing with the same subject should be construed together.  *See Lions Head Homeowners Ass'n v. Metropolitan Bd. of Zoning Appeals*, 968 S.W.2d at 301.  In addition, zoning ordinances must also be construed in light of the state statutes empowering local governments to enact them in order to avoid conflict and to enable related statutes and ordinances to operate concurrently.  *See City of Louisville v. Thompson*, 339 S.W.2d 869, 873 (Ky. Ct. App. 1960); *City of Dallas v. Sullenger*, 826 P.2d 34, 36 (Or. Ct. App. 1992); *Carroll v. Hastings*, 402 N.Y.S.2d 279, 283 (Sup. Ct. 1977).

**B.**

The source for the law applicable to this dispute are the state statutes, codified at Tenn. Code Ann. §§ 13-7-101, -410 (1999), establishing the ground rules for regulation of land use by local governments.  These statutes empower counties and municipalities to regulate the use of real property and the structure and design of buildings within their boundaries.  *See* Tenn. Code Ann. §§ 13-7-101(a)(1) & 13-7-201(a)(1).  The grants of power in these statutes are broad, *see Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d at 342, but not without limit.  In the words of the statutes, the counties and municipalities must exercise their power "in accordance with the conditions and the procedure specified in this part. . . ."  Tenn. Code Ann. §§ 13-7-101(a)(1), -201(a)(1).  Accordingly, we have held that counties and municipalities cannot wield their land use control power in conflict with state law.  *See Family Golf of Nashville, Inc. v. Metropolitan Gov't*, 964 S.W.2d at 257.

The General Assembly recognized that empowering local governments to enact zoning ordinances could result in hardship to existing property owners whose property was not previously covered by land use restrictions.  These property owners could find themselves in violation of a newly enacted zoning ordinance simply because the existing use of their property was inconsistent with the new restrictions.  Rather than leaving the resolution of this problem entirely to the local governments, the General Assembly decided, as a matter of policy, that certain property owners should always be permitted to continue to use their property as they had been using it before the local land use restriction took effect.  Thus, Tenn. Code Ann. § 13-7-208(b) provides, in part:

> In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, . . . then any industrial, commercial or business establishment in operation . . . prior to the zoning change shall be allowed to continue

in operation and be permitted; provided that no change in the use of the land is undertaken by such industry or business.[1]

The General Assembly also envisioned that property owners permitted to continue using their property contrary to the zoning laws might desire to expand their businesses or might, for some reason, desire to construct replacement facilities. Accordingly, Tenn. Code Ann. § 13-7-208(c) authorizes a property owner continuing to operate its business under Tenn. Code Ann. § 13-7-208(b) "to expand operations and construct additional facilities which involve an actual continuation and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning."[2] Likewise, Tenn. Code Ann. § 13-7-208(d) authorizes businesses "to destroy present facilities and reconstruct new facilities necessary to the conduct of such industry or business."[3]

Tenn. Code Ann. §§ 13-7-208(b), (c), (d) reflect the General Assembly's intention to permit existing businesses to continue operating even if they do not comply with later-enacted zoning laws. However, in 1973 the General Assembly realized that some businesses would attempt to use these statutes to justify expanding their nonconforming businesses onto adjoining property that had never been used inconsistently with the zoning laws. Accordingly, the General Assembly determined that this sort of geographic expansion should not be permitted and stated in plain terms: "The provisions of subsections(b)-(d) [of Tenn. Code Ann. § 13-7-208] apply only to land owned and in use by such affected business, and do not operate to permit expansion of an existing industry or business through the acquisition of new land." Tenn. Code Ann. § 13-7-208(e).[4] This statute, as we shall see, has a direct bearing on this case.

The Metropolitan Government of Nashville and Davidson County exercised its delegated zoning power by enacting a comprehensive zoning ordinance on September 2, 1977. This ordinance covered all real property located in Davidson County. Tracking Tenn. Code Ann. § 13-7-208(b), the ordinance authorized the continuation of nonconforming uses. *See* Metropolitan Gov't of Nashville & Davidson County, Tennessee, Code § 17.128.030 (1977) ("Metro. Code"). It also addressed alterations of buildings or structures occupied by a nonconforming use. The provision in existence at all times relevant to this case stated:

---

[1]The elided portions of the statute deal with changes in zoning ordinances and are not relevant to the issues on this appeal.

[2]To avoid nuisances to adjoining landowners, the statute imposes siting requirements on the right to construct additional facilities to expand current business operations.

[3]The property owner's right to construct replacement facilities is also subject to siting requirements to avoid nuisances to adjoining property owners.

[4]Act of May 4, 1973, ch. 279, 1973 Tenn. Pub. Acts, 1065, 1067. This specific resolution was added by amendment in the House of Representatives. *See* 1973 House Journal 1599.

A. Incidental Alterations. Incidental alterations may be made to a building or other structure occupied by a nonconforming use, or in connection with a permitted change of nonconforming use.

B. Alterations other than Incidental Repairs. Alterations other than minor alterations shall be permitted for replacement and/or expansion of legally nonconforming commercial and industrial uses subject to the following provisions:

1. The nonconforming use shall have been legally in existence at the time it became nonconforming, presently occupies the same property it occupied when it became nonconforming, and is not affected by Section 17.128.210[.]

2. The proprietor of the use for which replacement or expansion is sought is the owner of the property on which the use is located.

3. The replacement and/or expansion does not involve any change in use.

4. The alteration either complies with the applicable district bulk regulations, decreases the degree of noncompliance, or does not increase the degree of noncompliance.

5. Where the alteration involves an increase in the degree of noncompliance with the applicable district regulations, such expansion shall be permitted through the issuance of a conditional use permit by the metropolitan board of zoning appeals in accordance with the conditions set forth in Section 17.124.420.

Metro. Code § 17.128.060 (1997).[5]

Metro. Code § 17.128.060 did not contain a provision similar to Tenn. Code Ann. § 13-7-208(e) explicitly prohibiting owners of nonconforming uses from acquiring additional land to expand their business. However, it conditioned the right of an owner of a nonconforming use to alter its premises on the requirement that the nonconforming use occupy the "same property" it occupied when it became nonconforming. Mr. Sokolic now asserts that the "same property" requirement in Metro. Code § 17.128.060(B)(1) is not as broad as Tenn. Code Ann. § 13-7-208(e) and, therefore, that The Purple Onion should be permitted to expand onto his newly acquired property. The city responds by asserting that Metro. Code § 17.128.060(B)(1) is essentially equivalent to Tenn. Code Ann. § 13-7-208(e), and even if it were not, Tenn. Code Ann. § 13-7-208(e) prevents the proposed expansion of The Purple Onion's business.

**C.**

_____

[5]The city later repealed Metro. Code § 17.128.060(B). The zoning ordinance now simply invokes Tenn. Code Ann. § 13-7-208. *See* Metro. Code § 17.40.650 (1998). The repeal of Metro. Code § 17.128.060(B) has no direct bearing on this case.

Mr. Sokolic and 421 Corporation have two arguments why the board acted arbitrarily when it determined that the proposed expansion of The Purple Onion did not meet all the requirements of Metro. Code § 17.128.060(B) and was contrary to Tenn. Code Ann. § 13-7-208(e). First, they assert that the proposed expansion is on the "same property" because, for tax purposes, the tax assessor has combined the parcel at 2807 Nolensville Road with the parcel at 2809 Nolensville Road. Second, they assert that Tenn. Code Ann. § 13-7-208(e) does not apply to them because it has been supplanted by Metro. Code § 17.128.060.

Both Tenn. Code Ann. § 13-7-208 and Metro. Code § 17.128.060 deal with nonconforming uses. Because the ordinance draws its effectiveness from the state zoning laws, the statute and the ordinance should be read in pari materia to avoid conflict and to enable them to operate concurrently. Mr. Sokolic's and 421 Corporation's construction of the "same property" requirement in Metro. Code § 17.128.060(B)(1) would set the ordinance on a collision course with Tenn. Code Ann. § 13-7-208. This conflict can be avoided by giving the term "same property" a reasonable construction based on the common meaning of its words. As we see it, the term "same property" refers to the same tract of real property on which the business was operating when it became a nonconforming use. It does not include "new land" acquired by the property owner after the use became nonconforming, even if the "new land" was later combined with the existing property into one parcel for tax purposes.[6]

Mr. Sokolic contends that we should not use Tenn. Code Ann. § 13-7-208(e) to interpret Metro. Code § 17.128.060(B)(1) because the ordinance, rather than the statute, governs his application for a building permit. This argument overlooks the principle that local zoning ordinances cannot ignore state law and cannot grant rights that the state law denies. *See Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn. 1997) (holding that a local ordinance permitting the operation of a heliport within nine miles of a national park boundary did not take precedence over a state statute requiring that heliports within nine miles of a national park boundary be eliminated); *State ex rel. Beasley v. Mayor & Aldermen of Fayetteville*, 196 Tenn. at 415-16, 268 S.W.2d at 334. The restriction regarding acquiring new property in Tenn. Code Ann. § 13-7-208(e) is mandatory, and local governments cannot grant broader rights to expand nonconforming uses.

The state enabling statutes provide some direction for resolving conflicts between local zoning regulations and state statutes. Tenn. Code Ann. § 13-7-209 provides that when a local zoning ordinance and a state law contain different restrictions regarding the size of open spaces, building height, and percentage of the lot occupied by a building, the restriction requiring greater open space, lower building height, or the greater percentage of the lot left unoccupied shall control. This provision, on its face, does not apply to The Purple Onion's planned expansion of its nonconforming

_____

[6]In addition to being harmonious with Tenn. Code Ann. § 13-4-208(e), this interpretation of Metro. Code § 17.128.060(B)(1) is also consistent with the general purpose of the provisions in the zoning ordinance governing nonconforming uses which is to provide a "gradual remedy" for existing undesirable conditions caused by incompatible nonconforming uses by restricting "further investment in such uses which would make them more permanent establishments in inappropriate locations." Metro. Code § 17.128.010(B) (1997).

use.  There is no dispute between the parties involving open space, building height, or the footprint of a new building.

We conclude that the board did not act arbitrarily by considering Mr. Sokolic's request for a building permit in light of both Metro. Code § 17.128.060 and Tenn. Code Ann. § 13-7-208 and that the board neither misconstrued the facts nor misapplied the law.  When Nashville's zoning ordinance was enacted in September 1977, the real property at 2807 Nolensville Road was separate from the tract at 2809 Nolensville Road.  The Purple Opinion was operating only on the 2807 tract at the time and had never operated on the 2809 tract.  Mr. Sokolic's desire to expand The Purple Onion's business to the 2809 tract would enable the business to be operated on different property than it was operating on in September 1977 and would contravene Tenn. Code Ann. § 13-7-208(e) by allowing Mr. Sokolic to expand the business by acquiring new land.  Accordingly, like the trial court, we find no basis in the zoning ordinance, state law, or the facts, to second-guess the board's decision that The Purple Onion could not operate as a nonconforming use on the tract previously identified as 2809 Nolensville Road.

## III.
### THE SELECTIVE ENFORCEMENT CLAIM

Mr. Sokolic's and 421 Corporation's second argument is that the board acted arbitrarily and illegally by holding The Purple Onion to the strict requirements of the zoning ordinance while, at the same time, permitting other sexually oriented businesses competing with him in the Nolensville Road to operate illegally outside the zone in downtown Nashville set aside for these businesses.  The trial court dismissed this claim for failure to state a claim upon which relief can be granted.

### A.

The sole purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence.  *See Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999).  It requires the courts to review the complaint alone, *see Daniel v. Hardin County Gen. Hosp.*, 971 S.W.2d 21, 23 (Tenn. Ct. App. 1997), and to look to the complaint's substance rather than its form.  *See Kaylor v. Bradley*, 912 S.W.2d 728, 731 (Tenn. Ct. App. 1995).  Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief or when the complaint is totally lacking in clarity and specificity.  *See Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts.  *See Winchester v. Little*, 996 S.W.2d 818, 821 (Tenn. Ct. App. 1998); *Smith v. First Union Nat'l Bank*, 958 S.W.2d 113, 114 (Tenn. Ct. App. 1997).  Accordingly, courts reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *see Stein v. Davidson Hotel*, 945 S.W.2d 714, 716 (Tenn. 1997), and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts.  *See* Robert Banks, Jr. & June F. Entman, *Tennessee*

*Civil Procedure* § 5-6(g), at 254 (1999). On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion, we must likewise presume that the factual allegations in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint without a presumption of correctness. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d at 554 (Tenn. 1999); *Stein v. Davidson Hotel*, 945 S.W.2d at 716.

## B.

Persons making selective enforcement claims have a heavy burden to overcome because the courts, in recognition of the doctrine of separation of powers,[7] presume that public officials have discharged their duties in good faith, *see Williams v. American Plan Corp.*, 216 Tenn. 435, 441, 392 S.W.2d 920, 923 (1965), and in accordance with the law. *See Reeder v. Holt*, 220 Tenn. 428, 435-36, 418 S.W.2d 249, 252 (1967). Because practical realities require the allocation of limited public resources, the courts afford public agencies and officials substantial discretion with regard to law enforcement decisions. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 668 (1978). That some people escape the law's reach while others have the law enforced against them does not, by itself, run afoul of the equal protection guarantees in the state and federal constitutions. *See State v. Martin*, 719 S.W.2d 522, 525 (Tenn. 1986). There is no constitutionally protected right to have the law go unenforced, even if others who may be equally or more guilty escape punishment. *See Futernick v. Sumpter Township*, 78 F.3d 1951, 1056 (6th Cir. 1996).

However, the courts are not required to stay their hand when the government unfairly marshals its immense power against selected citizens. Regulatory or enforcement decisions based on personal dislike, vendetta, or some other impermissible consideration, are anathemas to the American tradition honoring the rule of law. *See Futernick v. Sumpter Township*, 78 F.3d at 1059. Accordingly, the federal and state constitutions do not permit regulatory and law enforcement decisions to be based on certain impermissible considerations. *See Wayte v. United States*, 470 U.S. 598, 608, 105 S. Ct. 1524, 1531 (1985). These impermissible considerations include race, gender, religion, or some other arbitrary classification such as the exercise of statutory or constitutional rights. *See Wayte v. United States*, 470 U.S. at 608, 105 S. Ct. 1531; *Futernick v. Sumpter Township*, 78 F.3d at 1057; *Irvin v. City of Clarksville*, 767 S.W.2d 649, 654 (Tenn. Ct. App. 1988); *Patterson v. Hunt*, 682 S.W.2d 508, 517 (Tenn. Ct. App. 1984), *citing Oyler v. Boles*, 360 U.S. 448, 452, 82 S. Ct. 501, 503 (1962).

Persons asserting a selective enforcement claim must prove that the regulatory or law enforcement decision had a discriminatory purpose and produced a discriminatory effect. *See United States v. Armstrong*, 517 U.S. 456, 466, 116 S. Ct. 1480, 1487 (1996). There are two elements to a selective enforcement claim: (1) the government has singled out the plaintiff for adverse regulatory or enforcement action while others engaging in similar activity have not been subject to the same type of action and (2) that the decision to prosecute them rests on an impermissible consideration

---

[7] *See National Loans, Inc. v. Tennessee Dep't of Fin. Institutions*, No. 01A01-9506-CH-00241, 1997 WL 194992, at *4 (Tenn. Ct. App. Apr. 23, 1997) (No Tenn. R. App. P. 11 application filed).

or purpose. *See National Loans, Inc. v. Tennessee Dep't of Fin. Institutions*, 1997 WL 194992, at *5.

With regard to the first element, the claimant must allege and prove: (1) that other non-prosecuted offenders have engaged or are engaging in essentially the same conduct, (2) that the non-prosecuted offenders violated the same regulation, statute, or ordinance that the claimant is accused of violating, and (3) that the magnitude of the non-prosecuted offender's violation was not materially different from that of the plaintiffs. *See National Loans, Inc. v. Tennessee Dep't of Fin. Institutions*, 1997 WL 194992, at *5. With regard to the second element, the claimant may prove either that the government singled out a protected class of citizens for enforcement of the law or that the government prosecution was intended to deter or punish the exercise of a protected right. *See Futernick v. Sumpter Township*, 78 F.3d 1056-57, 1057 n.7 (differentiating between "true selective enforcement" and "vindictive enforcement").[8]

## C.

Mr. Sokolic's and 421 Corporation's complaint must be tested against these standards to determine whether it articulates a selective enforcement claim. The complaint alleges only that Nashville is permitting other sexually oriented businesses to operate outside of their permitted zones even though they do not qualify as nonconforming uses. It does not allege that the board has the authority to commence enforcement actions against any of these businesses or that the board has ever granted these businesses, or any other nonconforming use for that matter, permission to expand on to adjoining property that was not owned when the use became nonconforming.

The governmental activity at issue in this case is the board's enforcement of the restriction against expanding a nonconforming use onto adjoining property, not the selling of adult oriented materials. Whether the complaint's bare-bones allegations articulate the first element of a selective enforcement claim is questionable. The complaint does not allege that other sexually oriented businesses are engaging in the same conduct that The Purple Onion seeks to engage in, i.e., attempting to expand onto adjoining property. It does not even allege that the board has permitted other nonconforming uses to expand their operations onto adjoining property. Accordingly, the complaint in this case does not allege that other non-prosecuted offenders have been permitted to engage in the same conduct that Mr. Sokolic and 421 Corporation desire to engage in.

Likewise, the complaint does not contain allegations sufficient to make out the second element of a selective enforcement claim. The complaint does not allege that the board's decision to enforce the restrictions regarding nonconforming uses against the proposed expansion of The Purple Onion stems from some improper discriminatory motive or that it has produced some

---

[8]An example of a "true selective enforcement" claim would be an allegation that Nashville does not enforce its sexually oriented business ordinance against male owners but consistently enforces its ordinance against female proprietors. An example of a "vindictive enforcement" claim would be an allegation that Nashville undertook to enforce its ordinance only after the owner of the sexually oriented business successfully challenged the city's nude dancing law in court.

discriminatory effect. It does not allege that the board's actions stemmed from some impermissible consideration like race, gender, or religion. Likewise, it does not allege that the board only enforces these restrictions against sexually oriented businesses, not against other businesses or that the board is enforcing the nonconforming use restrictions to punish either Mr. Sokolic or 421 Corporation for exercising some protected right. Thus, the complaint fails to state a claim upon which relief can be granted because it does not allege that board's decision to enforce the provisions regarding the expansion of nonconforming uses rests on some impermissible consideration or purpose.

## IV.

The memorandum and order affirming the decision of the board and dismissing the petition for common-law writ of certiorari is affirmed and the case is remanded to the trial court for whatever further proceedings may be required. The costs of this appeal are taxed jointly and severally to 421 Corporation and Mike Sokolic and their surety for which execution, if necessary, may issue.