FILED

03/03/2021

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 10, 2020 Session

## DEPARTMENT OF FINANCE AND ADMINISTRATION, DIVISION OF TENNCARE v. THE CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY D/B/A ERLANGER HEALTH SYSTEM

Appeal from the Chancery Court for Davidson County
No. 19-1192-II     Anne C. Martin, Chancellor

_____

### No. M2020-00230-COA-R3-CV

_____

This appeal concerns an administrative judge's decision to exclude several exhibits in a contested case between a hospital and the TennCare Division of the Tennessee Department of Finance and Administration. At issue in the contested case is the validity of two TennCare rules that regulate payment for emergency services provided to Medicaid beneficiaries when the hospital has no contract with the beneficiaries' managed care provider. The exhibits contain out-of-court statements made by industry representatives and federal agency employees about the meaning and application of federal and state law. TennCare asserts that the exhibits are necessary to show the reasonableness of its decision-making process. The healthcare services provider argues that the exhibits contain irrelevant, inadmissible hearsay. Having determined that the exhibits are not admissible under the Uniform Administrative Procedures Act, we affirm the administrative judge's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Jeffrey L. Wilson, Assistant Attorney General; and Meredith W. Bowen, Assistant Attorney General, Nashville, Tennessee, for the appellant, Tennessee Department of Finance & Administration.

Steven A. Riley, Gregory S. Reynolds, James N. Bowen, and Keane A. Barger, Nashville, Tennessee, for the appellee, Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System.

## OPINION

### FACTS AND PROCEDURAL HISTORY

The Tennessee Department of Finance and Administration's TennCare Division ("TennCare") commenced this action for judicial review of an administrative judge's preliminary ruling in the contested case between TennCare and a healthcare services provider, Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health Systems ("Erlanger"). TennCare seeks a review of the administrative judge's decision to exclude four of the exhibits.

Erlanger initiated the contested case after the Tennessee Supreme Court issued its decision in *Chattanooga-Hamilton County Hospital Authority v. UnitedHealthcare Plan of the River Valley, Inc.*, 475 S.W.3d 746 (Tenn. 2015). There, Erlanger disputed the amount that a managed care organization ("MCO") was obligated to pay for emergency services that Erlanger provided to the MCO's enrollees, who are beneficiaries of Tennessee's Medicaid plan, TennCare. *Id*. at 748–50. Because the MCOs are subject to TennCare rules and regulations, the Court found Erlanger's suit implicated the validity and applicability of two TennCare rules that regulate payment by MCOs. *Id*. at 763–65.[1] Thus, the Court held that Erlanger had to exhaust its administrative remedies before continuing with the civil suit. *Id*. at 765.

In *UnitedHealthcare Plan*, the Court summarized the relevant state and federal laws. *See id*. at 749–52. In short, to receive federal funding, Tennessee's State Medicaid plan must comport with federal law. *Id*. at 749 n.2. In particular, section 6085 of the federal Deficit Reduction Act of 2005 (the "DRA") provides the methodology that states must use when calculating payments to noncontract, emergency service providers:

> Any provider of emergency services that does not have in effect a contract with a Medicaid managed care entity that establishes payment amounts for services furnished to a beneficiary enrolled in the entity's Medicaid managed care plan must accept as payment in full no more than the amounts . . . that it could collect if the beneficiary received medical assistance under this subchapter other than through enrollment in such an entity. In a State where rates paid to hospitals under the State plan are negotiated by contract and not publicly released, the payment amount applicable under this subparagraph shall be the average contract rate that would apply under the State plan for general acute care hospitals or the average contract rate that would apply under such plan for tertiary hospitals.

---

[1] The matter was remanded and is being held in abeyance pending resolution of the administrative proceedings. *UnitedHealthcare Plan*, 475 S.W.3d at 766.

42 U.S.C. § 1396u-2(b)(2)(D). In 2007, the Tennessee General Assembly responded by enacting Tenn. Code Ann. § 71-5-108:

> The TennCare bureau is directed to submit a state plan amendment to the centers for medicare and medicaid services ["CMS"] that sets out a payment methodology for medicaid enrollees who are not also enrolled in medicare, consistent with provisions in § 6085 of the federal Deficit Reduction Act of 2005, regarding emergency services furnished by noncontract providers for managed care enrollees. The payment amount shall be the average contract rate that would apply under the state plan for general acute care hospitals.

Accordingly, TennCare submitted two state plan amendments to CMS: one setting the reimbursement rate for emergency outpatient services provided by noncontract hospitals "at seventy-four percent (74%) of the 2006 Medicare rates"; the other setting the reimbursement rate for inpatient treatment "required as a result of emergency outpatient services . . . at 57 percent of the 2008 Medicare" rates. Upon receiving CMS approval, TennCare promulgated two corresponding rules (the "Reimbursement Rules"). *See* Tenn. R. & Regs. Ch. 1200-13-13-.08(2)(b) and (c).

After the Supreme Court entered its decision in *UnitedHealthcare Plan*, Erlanger filed its petition for declaratory order with the Tennessee Department of Finance and Administration. Erlanger asserted the Reimbursement Rules violate Tenn. Code Ann. § 71-5-108 "because the payment amounts established . . . do not equal 'the average contract rate that would apply under the state plan for general acute care hospitals.'" After a lengthy discovery phase, the parties agreed to have the matter decided on their briefs and submitted evidence.

The parties, however, disputed the admissibility of numerous exhibits. As relates to this appeal, Erlanger objected to the admissibility of TennCare Exhibits 1, 3, 4, and 5 (collectively, "the Exhibits"). Erlanger argued that the Exhibits contained inadmissible hearsay. TennCare responded that the Exhibits established facts necessary to the dispute that it had no other way of proving.

According to TennCare, Exhibits 1, 3, and 5 are "emails containing statements . . . regarding interpretation of the federal DRA." Specifically, TennCare asserts that CMS advised TennCare—either directly or through an intermediary—that § 6085 of the DRA prohibits state plans from using "the average rate paid under MCO contract" to reimburse noncontract emergency service providers. Exhibit 1 consists of an email conversation between two TennCare employees and a CMS representative; Exhibits 3 and 5 consist of email conversations between a TennCare employee and a Tennessee Hospital Association ("THA") representative, who was purportedly passing along advice from CMS.

TennCare asserts that Exhibit 4 shows "that the purpose of the [Reimbursement Rules] was to change the rate at which noncontract providers were being reimbursed for emergency services at the time." The exhibit consists of an announcement drafted by THA and then forwarded to a TennCare employee for approval. The announcement purports to explain the history, purpose, and application of the newly enacted Tenn. Code Ann. § 71-5-108 for THA members.

The administrative judge sustained Erlanger's objections to all four of the Exhibits. The judge concluded that CMS and THA's statements were not "business records" because TennCare did not prepare them. Further, the administrative judge concluded that the Exhibits were not admissible under the applicable evidentiary standard in the Uniform Administrative Procedures Act ("UAPA"):

> The proponent of the [UAPA] exception must meet two prongs. TennCare must demonstrate that the proof offered [1] is "not reasonably susceptible to proof under the rules of court" *and* (2) "of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." Tenn. Code Ann. § 4-5-313(1). None of the . . . documents, and the statements contained therein, are incapable of proof under the Tennessee Rules of Civil Procedure, the Tennessee Uniform Administrative Procedures Act, or the Tennessee Rules of Evidence. Accordingly, all . . . of the exhibits are inadmissible.

Thereafter, TennCare requested and obtained a stay of the proceedings and filed a petition for judicial review.

The trial court affirmed the administrative judge's ruling, concluding that TennCare failed to show that the Exhibits were exempt under either the Rules of Evidence or the UAPA. In particular, the court rejected TennCare's assertion that it was not attempting to use the Exhibits to prove the truth of the matter asserted therein:

> It appears that TennCare is attempting to sway the [commissioner's designee] that the [Reimbursement] Rules properly incorporate [§ 6085 of the DRA] because TennCare sought and acted in conformity with CMS and THA guidance. That guidance, however, is not binding, and is certainly not authority for anything. The legally sustainable nature of the [Reimbursement] Rules is at issue in this case, not whether TennCare was acting in good faith consistent with guidance from federal agencies and industry organizations.

This appeal followed.

**ISSUES**

TennCare raises one issue on appeal: Whether, in an administrative proceeding, the administrative judge erred by excluding as hearsay four exhibits proffered by TennCare.

**STANDARD OF REVIEW**

An administrative judge's decision to admit or exclude evidence "should be reviewed using the same standard used to review similar decisions by trial judges." *Tennessee Dep't of Health v. Frisbee*, No. 01A01-9511-CH-00540, 1998 WL 4718, at *2 (Tenn. Ct. App. Jan. 9, 1998). The issue of whether a trial judge properly excluded evidence is reviewed under an abuse of discretion standard. *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 294 (Tenn. 2017).

The abuse of discretion standard of review does not permit a reviewing court to substitute its discretion for that of the trial court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nevertheless, the abuse of discretion standard of review does not immunize a trial court's decision from meaningful appellate scrutiny:

> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a [trial] court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id*. at 524–25 (internal citations omitted).

**ANALYSIS**

TennCare contends that the Exhibits are admissible for three reasons: (1) TennCare is not using the statements of CMS and THA representatives to "to prove the truth of the matter asserted," *see* Tenn. R. Evid. 801(c); (2) the emails are records of regularly conducted activity, *see* Tenn. R. Evid. 802(6); and (3) the emails are "necessary to ascertain facts not reasonably susceptible to proof under the rules of court, [and are] of a type commonly relied upon by reasonably prudent men in the conduct of their affairs," *see* Tenn. Code Ann. § 4-5-313.

The rule for admissibility of evidence in contested cases is found in Tennessee Code Annotated § 4-5-313(1):

> The agency shall admit and give probative effect to evidence admissible in a court, and when necessary to ascertain facts not reasonably susceptible to proof under the rules of court, evidence not admissible thereunder may be admitted if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. The agency . . . shall exclude evidence which in its judgment is irrelevant, immaterial or unduly repetitious.

Thus, Tennessee's Rules of Evidence "must be followed except when it is necessary for the agency to 'ascertain facts not reasonably susceptible to proof under the rules of court.'" *Martin v. Sizemore*, 78 S.W.3d 249, 273 n.13 (Tenn. Ct. App. 2001) (citations omitted). Like Tennessee's Rules of Evidence, "the UAPA plainly requires the exclusion of irrelevant or immaterial evidence." *Robertson v. Tennessee Bd. of Soc. Worker Certification & Licensure*, 227 S.W.3d 7, 14 (Tenn. 2007).

In its brief before the administrative judge, Erlanger objected to the Exhibits' admission because they contained hearsay and were not "of a type commonly relied upon by reasonably prudent men." The administrative judge sustained the objections on the basis that the statements did not qualify for a hearsay exception under the Rules of Evidence and did not qualify under the UAPA's standard because "[n]one of the . . . documents, and the statements contained therein, [were] incapable of proof."

TennCare argues that the administrative judge incorrectly applied the UAPA standard because he found none of the Exhibits were "**incapable** of proof" rather than "not **reasonably susceptible** to proof." Although the terminology used by the administrative judge was incorrect, we find it inconsequential because, in his explanation of the law, the administrative judge quoted the correct language of Tenn. Code Ann. § 4-5-313(1). Moreover, the record demonstrates that the facts TennCare seeks to establish with the Exhibits are either irrelevant or are otherwise "susceptible to proof under the rules of court."

## I. HEARSAY

TennCare argues that it is using the interpretation of the DRA from CMS and THA to show the effect that those statements had on TennCare's rulemaking process—not for the purpose of establishing the interpretation was correct. Particularly, TennCare contends that Exhibits 1, 3, and 5 "explain[] the reasons" why TennCare chose the payment methodologies in the Reimbursement Rules. In other words, the Exhibits prove that TennCare was acting in good-faith reliance on advice from CMS and THA during its decision-making process. This argument misapprehends the central issue in Erlanger's contested case.

Erlanger has contended at all stages in these proceedings that the Reimbursement Rules are invalid "because the payment amounts established . . . do not equal 'the average contract rate that would apply under the state plan for general acute care hospitals,'" as

required by Tenn. Code Ann. § 71-5-108. Thus, the dispositive issue is whether the promulgated Reimbursement Rules **actually comply with** § 71-5-108—not whether TennCare officers reasonably thought the Rules complied during the rulemaking process. Moreover, we presume that public officials have discharged their duties in good faith, *421 Corp. v. Metro. Gov't of Nashville & Davidson Cty.*, 36 S.W.3d 469, 480 (Tenn. Ct. App. 2000), and Erlanger's petition for a declaratory order makes no allegation that TennCare officers discharged their duties otherwise.

The language in Tenn. Code Ann. § 71-5-108 is clear; it directed TennCare to comply with § 6085 of the DRA when developing a payment methodology for "emergency services furnished by noncontract providers for managed care enrollees," and it states that "[t]he payment amount shall be the average contract rate that would apply under the state plan for general acute care hospitals." When statutory language is clear, "resort to auxiliary rules of construction is unnecessary." *State v. Goodman*, 90 S.W.3d 557, 564 (Tenn. 2002) (citing *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998)). As the trial court correctly stated, "[t]he legally sustainable nature of the [Reimbursement] Rules is at issue in this case, not whether TennCare was acting in good faith consistent with guidance from federal agencies and industry organizations." Accordingly, evidence proffered to show good faith is irrelevant and inadmissible.

For the foregoing reasons, we affirm the trial court's ruling that Exhibits 1, 3, and 5 are irrelevant and inadmissible, because they do not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Tenn. R. Evid. 401 (defining "Relevant Evidence"), and we need not address whether the emails qualify as business records under Rule 803(6).

## II. UAPA Standard

TennCare also argues that all four of the Exhibits are admissible under the UAPA. TennCare explains that the emails are "necessary to ascertain facts" due to the unavailability of their authors. As we just stated, the facts to be establish with Exhibits 1, 3, and 5 are irrelevant and inadmissible. Therefore, the following analysis will be limited to TennCare's assertion that Exhibit 4 reflects "the purpose of the TennCare rules and Medicaid state plan amendments."

To the extent that the facts in Exhibit 4 would be relevant, the record demonstrates that those facts are "reasonably susceptible to proof under the rules of court"; thus, the emails in Exhibit 4 are not "necessary to ascertain" those facts. As recognized in *UnitedHealthcare Plan*, the purpose for enacting the Reimbursement Rules was to comply with § 71-5-108, which was enacted to comply with § 6085 of the DRA. *See* 475 S.W.3d at 751. The record is replete with other evidence on this issue, including proposed house and senate bills, comments made before various legislative committees, and transmittal memorandums issued as part of the rulemaking process. Thus, the administrative judge—

who was familiar with the record—did not err by concluding that Exhibit 4 contained evidence of facts susceptible to proof under the rules of the court. Accordingly, we affirm the trial court's ruling as to Exhibit 4 as well.

## IN CONCLUSION

For all these reasons, the judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against TennCare.

_____
FRANK G. CLEMENT JR., P.J., M.S.